IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WAYNE THOMAS HOUFF,       )
                          )   Civil No. 06-445-PK
      Petitioner,    )
                          )
   v.                  )
                          )
SHARON BLACKETTER,        )
Superintendent, Eastern   )   FINDINGS AND RECOMMENDATION
Oregon Correctional      )
Institution,           )
                          )
      Respondent.    )

     Thomas J. Hester
     Assistant Federal Public Defender
     101 S.W. Main Street, Suite 1700
     Portland, Oregon  97204

        Attorney for Petitioner

     Hardy Myers
     Attorney General
     Jacqueline Sadker
     Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97301

        Attorneys for Respondent

   1 - FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge.

Petitioner Wayne Thomas Houff brings this habeas corpus action pursuant to 28 U.S.C. § 2254 and challenges his convictions for Using a Child in a Display of Sexually Explicit Conduct, Encouraging Child Sexual Abuse in the Second Degree, and Sexual Abuse in the First Degree. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#2) should be denied, and Judgment should be entered dismissing this action with prejudice.

## BACKGROUND

In or about December 1997, police discovered six photographs of the victim in this case--Houff's one-time neighbor, a 4-year-old Vietnamese girl ("E.P."). In the photos, E.P. is wearing two different dresses, indicating the pictures were taken on two different occasions, and the background matches Houff's apartment. Tr. 251-52. In some of the photos E.P. is nude with her genitalia exposed and in one photo Houff's feet and legs, identified by a distinct tattoo, can be seen spreading E.P.'s legs apart. Tr. 253. Though he initially denied taking the photos, when confronted with the tattoo evidence, Houff confessed to taking the pictures of E.P. Tr. 254. When police searched Houff's apartment, they found peepholes leading from his apartment to E.P.'s bedroom. Tr. 264.

Police located E.P.'s mother, Chau Tran, who had since moved away upon discovery of the peepholes. Tran spoke only Vietnamese and a family friend acted as an interpreter. Tr. 131. When

officers showed Tran a picture of Houff, she identified him as her former neighbor. When they showed her the explicit photographs of E.P., Tran became very upset. E.P. made no disclosures to the police at this meeting, but Tran later confronted her alone. When Tran first asked E.P. about the incident, E.P. refused to talk to her. Tr. 135. Tran threatened to commit suicide if E.P. did not tell her the truth and promised to buy E.P. new clothes if she told her what Houff did to her when she went to his apartment. Tr. 136-37. Tran testified that E.P. then disclosed that Houff lured her into his apartment with candy, and, on at least two occasions, placed his finger and penis in her vagina.[1],[2]    Tr. 134, 137.

---

[1]    Tran initially testified at a pretrial hearing related to Houff's motion to suppress E.P.'s statement and it was later stipulated to by the parties that a transcript of this testimony could be introduced at the bench trial. Tr. 199.

[2]    Tran relayed the content of E.P.'s statements on two prior occasions: in her interview with personnel at E.P.'s CARES evaluation on January 26, 1998, and in a follow-up interview with police on April 9, 1998. According to the CARES report, Tran stated that "[E.P.] had told her about a man giving her a bowl of candy. She said the man touched her private, and took her pants down. [E.P.] described that man as putting his private on her private. According to Ms. Tran, [E.P.] told her that she yelled, and ran outside. [E.P.] also told her mother that the man threatened to kill her if [E.P.] told about that. Ms. Tran thought the man [E.P.] talked about was the same one who allegedly took pictures of [E.P.]." Respondent's Exhibit 106, SER p. 10. In her second interview with police, Tran stated that E.P told her she had gone into Houff's apartment twice. The first time he told her to pull down her pants so he could take pictures and then she could have candy. E.P. complied, was given candy and left with nothing else occurring. The second time Houff took off his pants, told E.P. to take off her clothes and began taking pictures of her as he had done before. According to the police report, Tran stated "[E.P.] said [Houff] used his finger and 'touched' her vagina. [Houff] then tried to stick his penis in her 'butt.' [E.P.] told

3 - FINDINGS AND RECOMMENDATION

E.P. was taken for a CARES evaluation and a physical exam revealed evidence of vaginal penetration for which "abuse [was] the only reasonable explanation." Tr. 54. During the physical exam when the practitioner took a picture of E.P.'s genitalia, upon hearing the camera click, E.P. whispered to the interpreter, "Oh, I remember the man with the glasses did that to me." Tr. 65.

Houff was initially indicted on counts of Using a Child in a Display of Sexually Explicit Conduct and Encouraging Child Sexual Abuse. Thereafter, on May 1, 1998, the Multnomah County Grand Jury returned a reindictment charging Houff with four counts of Using a Child in a Display of Sexually Explicit Conduct, four counts of Encouraging Child Sexual Abuse in the Second Degree, three counts of Sexual Abuse in the First Degree, and one count of Attempted Rape in the First Degree. Respondent's Exhibit 103. In a bench trial, the court found Houff guilty on four counts of Using a Child in a Display of Sexually Explicit Conduct, four counts of Encouraging Child Sexual Abuse in the Second Degree, and two counts of Sexual Abuse in the First Degree. The court granted Houff's motion for acquittal on one count of Sexual Abuse and found him not guilty of Attempted Rape. Respondent's Exhibit 101. The court

---

her mother she had said, 'No no my mom says I can't do that,' and began screaming and crying as it hurt. Suspect stopped his activity and [E.P.] put on her clothes and went to her apartment next door." Id. at 15. During the interview, Tran told officers that E.P. knew the difference between her butt and her vagina. Id.

imposed an indeterminate 30 year sentence on counts 1-4 and a 150 month minimum sentence for the Sexual Abuse convictions.  <u>Id</u>.

Houff directly appealed his sentence, but the Oregon Court of Appeals affirmed the trial court without a written opinion, and the Oregon Supreme Court denied review.  <u>State v. Houff</u>, 178 Or. App. 320, 37 P.3d 258 (2001), <u>rev. denied</u> 334 Or. 190, 47 P.3d 485 (2002); Respondent's Exhibits 104-109.

Houff next filed for post-conviction relief ("PCR") in state court.  The PCR trial court denied relief.  <u>Houff v. Santos</u>, Umatilla County Circuit Court Case No. 03-0065.  On appeal, the Oregon Court of Appeals affirmed without a written opinion, and the Oregon Supreme Court denied review.  <u>Houff v. Santos</u>, 203 Or. App. 544, 129 P.3d 280 (2005), <u>rev. denied</u> 340 Or. 201, 131 P.3d 195 (2005); Respondent's Exhibits 133-138.

Houff also filed a notice of appeal following a modification made to the judgment in the criminal proceeding relating to the term of post-prison supervision on counts 1-4.  The Oregon Court of Appeals affirmed without a written opinion, and the Oregon Supreme Court denied review.  <u>State v. Houff</u>, 207 Or. App. 766, 143 P.3d 570 (2006), <u>rev. denied</u> 342 Or. 46 (2006); Respondent's Exhibits 139-143.

On March 30, 2006, Houff filed this action.  He raised the following grounds for relief:

1.    The State of Oregon violated Petitioner's right to a jury trial and due process when departure [*sic*] were imposed

on counts 1 to 4 that exceeded the statutory maximum of 24-months by 346-months without notice, submitting the predicate facts for such to a jury, and proving them beyond a reasonable doubt. United States Constitution, Amendments Six and Fourteen and Apprendi v. New Jersey, 536 US 466 (2000).

Supporting Facts: At Petitioner's sentence hearing the sentencing judge imposed departure sentences on counts 1 to 4. The judge set Petitioner's sentence maximum at 24-months (grid block 8-F), then departed to 48-months, then again [to] 360-months (figure reflects the 09/14/04 amended judgment, the original figure was 396-months), pursuant to ORS 161.725 to 161.737, based on findings made by the court using a preponderance of the evidence standard. The Court then imposed another departure on each count, pursuant to ORS 426.510 to 426.675, based on findings made by the court using a standard <u>less</u> than preponderance of the evidence. Petitioner never admitted to any of the findings, nor did he waive his jury trial, or due process rights to such.

2.    The State of Oregon violated Petitioner's confrontation and due process rights when testimonial, out-of-court statements were admitted into trial without Petitioner ever having the opportunity to cross-examine the declarant.

Supporting Facts: Petitioner's girlfriend, Dorothy Ellison, was found in possession of four photographs of the declarant in little to no clothing during a routine traffic stop. She implicated Petitioner. The Portland Police Department initiated an investigation against Petitioner. Ellison was never charged. After Petitioner's arrest, Detective Scott went to the declarant's household and presented her mother (Tran) with the photographs and told her that he was conducting an investigation. No statements were taken at the time, but an agreement was made to take the declarant to CARES. Later that night, Tran asked the declarant what happened. The declarant stated that nothing happened several times. Tran threatened suicide and to withhold gifts if the declarant did not tell her what happened. Tran later testified as to what she said the declarant told her what [*sic*] happened at trial. Tran also relayed different versions of what she said the declarant told her to CARES and to Detective Scott. The trial court held an evidentiary hearing and allowed into trial the out-of-

court statements by Tran, CARES, and Detective Scott.
Petitioner never had an opportunity to cross-examine the
declarant before or during the trial.

3.    The State of Oregon violated Petitioner's right to a jury
trial and due process when departure [*sic*] were imposed
on counts 1 to 4 that exceeded the statutory maximum of
24-months by 346-months without notice, submitting the
predicate facts for such to a jury, and proving them
beyond a reasonable doubt.  United States Constitution,
Amendments Six and Fourteen; <u>Blakely v. Washington</u>, 542
US___(2004).

Supporting Facts:  See Ground One above.

4.    Petitioner was denied due process under the Fourteenth
Amendment to the United States Constitution when the
Post-Conviction court refused him any discovery to
support his claims of ineffective assistance of counsel.

Supporting Facts:  Petitioner acted [ ] pro se for his
Post-Conviction.  He alleged at least 50-claims in his
Formal Petition for post-conviction relief.  Petitioner
attempted to procure discovery through letter, subpoenas,
discovery motions, and motions to compel.  The post-
conviction court refused to enforce and of Petitioner's
request.  Additionally, before trial, Petitioner asked
the Oregon Supreme Court to issue a writ of mandamus
ordering the post-conviction court to enforce
Petitioner's discovery requests.  Petitioner was denied.
The post-conviction court subsequently denied Petitioner
any relief.

5.    Petitioner was denied due process of law under the
Fourteenth Amendment [to] the United States Constitution
when the post-conviction trial court limited Petitioner
to under 20-minutes to present and litigate his case at
trial.

Supporting Facts:   In the post-conviction court's
scheduling order, it stated that if Petitioner would
need additional time to litigate his case at trial, he
was to submit a request 20-days prior to trial.
Petitioner timely filed a request for at least 2-hours.
Petitioner had alleged at least 50-claims in his Formal
Petition for post-conviction relief.  He was not going to
attempt to litigate all of these claims at trial, in fact
had his typewritten argument ready, which was later

appended to his post-conviction appeal. At trial, the judge told Petitioner he would only get 20-minutes to argue his claims, but would later give him an opportunity to make closing statements. Petitioner took exception to this on the record. The judge cut Petitioner off after about 10-minutes, denied relief and adjourned court. Petitioner was not given the 2-hours requested, the 20-minutes or the closing that the judge said he could have.

6.    Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to move for severance of counts 1 to 8, from 9 to 12.

Supporting Facts: Petitioner was originally indicted on 8-counts of taking and possessing photographs of the declarant. After the change in events as described in [Ground 2] above, Petitioner was reindicted with the above 8-counts plus four other counts alleging inappropriate sexual contact with the declarant. During pre-trial hearings the judge pronounced guilt, his clerk who was of Southeast Asian descent, similar to declarant, made the comment that Petitioner should be "strung up by his balls," and the judge made evidentiary rulings on evidence seized from Petitioner's apartment without ever viewing it, based solely on the State's inaccurate description.

The State offered and was allowed to present evidence of erotic magazines seized in the search of Petitioner's apartment only to attempt to prove elements on counts 1 to 8. The state later argued the same evidence against counts 9 to 12. The court used this evidence to convict on all counts.

7.    Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object or demur the reindictment for failing to allege the predicate facts the state intended to rely on to enhance Petitioner's sentence under ORS 161.725 and 137.700 as violating Sixth and Fourteenth Amendments.

Supporting Facts: At Petitioner's sentence hearing, the court imposed departure sentences pursuant to ORS 161.725 and 137.700 based on facts that were not alleged in the indictment, or any other judicial notice.

8.   Petitioner was denied effective assistance of trial counsel under the United States Constitution, Amendments Six and Fourteen when counsel failed to object to Petitioner's sentences, pursuant to ORS 161.725 being 346-months past the statutory maximum of 24-months, and sentences pursuant to ORS 137.700 being 96 months past the statutory maximum of 24-months as violating Petitioner's jury trial and due process rights under the Sixth and Fourteenth Amendments.

Supporting Facts:  See Ground One above.

9.   Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel failed to object to Petitioner's sentences, pursuant to ORS 161.725, as being cruel, unusual, and disproportionate to convictions under ORS 163.670 in violation of Amendments Eight and Fourteen.

Supporting Facts:  See Ground One above.

10.  Petitioner was denied effective assistance of counsel under the United States Constitution, Amendments Six and Fourteen, when counsel failed to object to Petitioner's sentences on counts 1 to 4 as violating Petitioner's guarantee to be free from multiple punishments under the double jeopardy and due process clauses of the Fifth and Fourteenth Amendments.

Supporting Facts:  See Ground One above.

11.  Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution, when trial counsel failed to object to testimonial, out-of-court statements from the declarant admitted at trial as violating Petitioner's confrontation and due process rights under the Sixth and Fourteenth Amendments.

Supporting Facts:  See Ground Two above.

12.  Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to object to Shelton, Dowling, Tran, Detective Scott, and the prosecutor vouching for the declarant's veracity as violating Petitioner's confrontation and due process rights under the Sixth and Fourteenth Amendments.

9 - FINDINGS AND RECOMMENDATION

Supporting Facts:  The examples are too numerous and lengthy to enumerate here.  Petitioner will have them in his memorandum of law that will be filed in this case. Examples are on transcript pages 53,68,70,73,74,86, 116,120,121-22,123,135-36,137,138,150-51,152-53,154,164, and 168.  There was no witness nor any physical evidence that tied Petitioner to inappropriately touching the declarant.  The entire case on counts 9 to 12 was one of the declarant's word against Petitioner's.

13.  Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when trial counsel failed to do any investigating or interviewing.

Supporting Facts:  Trial counsel did not interview any potential witness for the state or defense, nor did he do any investigating.

14.  Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when trial counsel failed to object to the state's failure to produce a witness list and testimony expected as violating Petitioner's due process rights under the Fourteenth Amendment and Brady v. Maryland, 373 US 83 (1963).  Counsel also failed to move to exclude state's witness that the defense did not have prior notice of.

Supporting Facts:  Bui, the interpreter Detective Scott used when interviewing the Tran family was allowed to testify, notwithstanding the fact that his name did not appear on any witness list or on the reindictment.  Bui gave crucial rehabilitative expert testimony on the Vietnamese culture in Portland to show why Tran's stories changed and would not have any interest in or fabricate any allegations against Petitioner.

Susan Elliott, Dorothy Ellison's daughter, was allowed to testify, notwithstanding the fact that her name did not appear on any witness list or the reindictment.  Elliot gave crucial testimony that she found photographs of the declarant in Petitioner's apartment.  As stated above, these photographs were found in Dorothy Ellison's possession during a routine traffic stop.  Even after an extensive search of Petitioner's apartment, there was not any illegal items seized.  Possession is an element that

needs to be proven beyond a reasonable doubt on counts 1 to 8.

15.   Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to develop any viable trial theories or present a defense at trial.

Supporting Facts: At Petitioner's trial, counsel did not call any witnesses or present any defense. Counsel, on the record, implicitly or explicitly, voiced his opinion that petitioner was guilty of the crimes charged after Petitioner had pleaded not guilty to all the charges and proclaimed actual innocence.

16.   Petitioner was denied effective assistance of counsel, under the Sixth and Fourteenth Amendments of the United States Constitution, when counsel failed to go over the PSI with petitioner, then object to hearsay statements and criminal history contained therein, which violated Petitioner's confrontation and due process rights under the Sixth and Fourteenth Amendments.

Supporting Facts:  The PSI contained Petitioner's criminal history, which stated he had two juvenile convictions. This is inaccurate. Petitioner was never arrested or charged with any crimes before the age of 18. Criteria for finding a personality disorder is that it has to be onset before the age of 18. A personality disorder is a finding, under ORS 161.725, the court made to enhance Petitioner's sentence by 346-months.

17.   Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when trial counsel failed to object to the State's sentencing exhibits S1 and S2 as violating Petitioner's due process and confrontation rights under the Sixth and Fourteenth Amendments.

Supporting Facts:  The prosecutor, at Petitioner's sentencing, offered a scrap book that he said was sent from Petitioner's then wife in Minnesota. Counsel never went over these exhibits with Petitioner. This book was never found in Petitioner's possession. This book was used to enhance Petitioner's sentence by 346-months.

18.   Petitioner was denied effective assistance of trial counsel under the Sixth and Fourteenth Amendments to the United States Constitution, when counsel failed to move

to exclude all the literature seized during the search of Petitioner's apartment because the seized literature was protected under the First Amendment and not specifically enumerated in the search warrant as required by the Fourth Amendment.

Supporting Facts:  The Portland Police Department conducted a search of Petitioner's apartment pursuant to a signed search warrant to look for further evidence of the charged crimes of taking and possessing photographs of the declarant or any other potential victim(s).

The search produced not a single piece of child pornography or anything remotely related to such, or any other illegal activities.  They did, however, seize several pieces of literature that was subsequently used to enhance Petitioner's sentence from 24 to 360-months.

19.  Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when trial counsel failed to object and argue that ORS 161.725 was unconstitutionally vague and/or overbroad on its face and/or as applied to Petitioner in violation of his due process rights, Fourteenth Amendment.

Supporting Facts:  The sentencing judge made the finding that Petitioner had a "severe personality disorder indicating a propensity toward crimes that seriously endanger the life and safety of another..."  This quoted phrase is the one Petitioner contends counsel should have challenged.

20.  Petitioner was denied effective assistance of trial counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when he failed to object to the state not giving any notice that psychologist Colistro would be testifying at Petitioner's sentencing and that Colistro's testimony did not have a proper foundation, or scientific validity and pertinence.

Supporting Facts:  There was not any foundation laid for Colistro's testimony.  Colistro never interviewed or evaluated Petitioner.  Colistro gave testimony at Petitioner's sentencing, diagnosing him with several mental disorders.  Colistro's testimony was used to enhance Petitioner's sentences from 24 to 360-months.

21. Petitioner was denied effective assistance of trial counsel under the Sixth and Fourteenth Amendments when counsel failed to object to and argue that whether Petitioner has a severe mental disorder is a question of medicine and not one of law, therefore, the court violate[d] Petitioner's equal protection and due process rights in making such a finding.

    Supporting Facts: The sentencing judge does not have any degrees in medicine or psychology, nor is he trained in such. The judge made a finding that was based in medicine and not a legal one.

22. Petitioner was denied effective assistance of trial counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when counsel failed to object to the sentencing court violating Petitioner's due process rights when it imposed sentences, pursuant to ORS 426.510 to 426.675, in violation of clearly established law in State v. Cunningham, 82 Or App 292 (1986).

    Supporting Facts: Oregon law states that before being sentenced pursuant to ORS 426.510 to 426.675, the sentencing court must be in possession of a report by a "facility." Petitioner's sentencing judge never possessed any psychological report from a facility.

23. Petitioner was denied effective assistance of trial counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when counsel failed to object to the court's violating Petitioner's due process rights when it made a finding under ORS 426.510 to 426.675 using a standard of proof less than preponderance of the evidence.

    Supporting Facts: At Petitioner' sentence hearing, the judge imposed departure sentences of 360-months, pursuant to ORS 161.725(1)(a), using the preponderance of the evidence standard. The court then imposed additional departures on the same counts 1 to 4, pursuant to ORS 426.510 to 426.675, using a standard LESS than preponderance of the evidence. (Tr 458)

24. Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when trial counsel failed to object and argue that the sentencing court was violating Petitioner's due process rights under the Fourteenth

Amendment when the court imposed sentences, pursuant to ORS 426.510 to 426.675, based on insufficient evidence.

Supporting Facts:  The court used hearsay and double hearsay that constituted uncharged, unproven allegations that were 10-years removed, coupled with junk science to make this finding.

25.  Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution, when trial counsel failed to object to the sentencing court violating Petitioner's protection against double jeopardy guarantees of not being punished twice for the same conviction, when the sentencing court imposed punitive departure sentences, pursuant to ORS 426.510 to 426.675, in addition to two other departures.

Supporting Facts:  Petitioner was already given two separate departures on counts 1 to 4.  (See Grounds One and Ten above.)  The objective of a sentence under these statutes is so the defendant may receive treatment.  The sentencing judge made a finding that Petitioner was not remandable [amenable] to treatment. Petitioner has served over eight years and has yet to receive any treatment as required by statute.

26.  Petitioner was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution, when appellate counsel failed to raise a claim that Petitioner was being denied due process under the Fourteenth Amendment when he was not given a complete set of trial transcripts for appellate review.

Supporting Facts: Appellate counsel designated all trial and sentencing transcripts.  At least one hour of the beginning of Colistro's testimony was not transcribed. Colistro's testimony was used to enhance Petitioner's sentence by 346-months.

27.  Petitioner was denied due process under the Fourteenth Amendment of the United States Constitution when the post-conviction court denied him relief based on the cumulative ineffective assistance doctrine.

Supporting Facts:  Petitioner requested the post-conviction court consider the cumulative error doctrine when considering his claims of ineffective assistance of counsel.  A Petitioner for post-conviction relief may

14 - FINDINGS AND RECOMMENDATION

assert and receive relief based on cumulative errors of counsel.

28. Petitioner was denied due process under the Fourteenth Amendment of the United States Constitution, when the sentencing court refused jurisdiction on Petitioner's motion to amend/correct his sentences, pursuant to ORS 138.083, but assumed jurisdiction on the State's motion pursuant to the same motion and statute.

   Supporting Facts: See (I)(F)(ii) above [Historical Facts section of Petition].

29. Petitioner was denied jury trial and due process rights under the Sixth and Fourteenth Amendments to the United States Constitution, when the sentencing court imposed departure sentences pursuant to ORS 137.700 without notice, submitting the predicate facts to a jury and proving such facts beyond a reasonable doubt.

   Supporting Facts:  On counts 9 and 10, petitioner was sentenced to 75-months in prison and 45-months PPS on each count.  The statutory maximum under grid block 8-F for these convictions is 24-months.  When the 75-month prison term is added to the 45-month PPS term the total comes to 120-months--96-months more than the statutory maximum.

30. Petitioner's sentences, pursuant to ORS 161.725 were cruel, unusual, and disproportionate to the underlying convictions under the Eighth and Fourteenth Amendments to the United States Constitution.

   Supporting Facts:  See Ground One above.

31. The sentencing court denied Petitioner his rights under the Eighth and Fourteenth Amendments to the United States Constitution, when imposing sentences on counts 1 to 4 based on Petitioner's status.

   Supporting Facts:  The sentencing court based its departure sentences on counts 1 to 4 based on Petitioner's alleged severe mental disorder, or Petitioner's status.

32. The sentencing court violated Petitioner's due process rights under the Fourteenth Amendment to the United States Constitution, when imposing sentences, pursuant to ORS 426.510 to 426.675, when sentences did not comport

with the law, used the wrong standard of proof, and based on insufficient, unreliable evidence.

Supporting Facts: See Grounds Twenty-Two (22), Twenty-Three (23), and Twenty-Four (24) above.

33. The sentencing court violated Petitioner's confrontation and due process rights under the Sixth and Fourteenth Amendments of the United States Constitution, when using hearsay and double hearsay to depart Petitioner's sentence from 24 to 360-months.

Supporting Facts: See Ground Sixteen above.

Respondent asks the court to deny relief on the Petition because: Grounds 3-10 and 12-33 are unbriefed and should be denied on that basis; Ground One and Houff's claim relating to the sufficiency of the evidence set forth in Section II of his Supporting Memorandum are procedurally defaulted; and Grounds Two and Eleven were correctly denied on the merits in state court decisions entitled to deference. Respondent's Reply (#46), pp. 1-2 & 8.

## DISCUSSION

## I.   Abandoned Claims (Grounds 3-10 and 12-33)

Notwithstanding the fact that respondent addressed all of the claims set forth in the *pro se* Petition, Houff fails to brief Grounds 3-10 and 12-33 in his supporting memorandum. Instead, Houff confines his argument to allegations: (1) that his confrontation rights were denied when he was convicted of sexual abuse based solely on unreliable, inconsistent, and coerced, hearsay evidence, or in the alternative that trial counsel was ineffective for failing to object to admission of such evidence as

16 - FINDINGS AND RECOMMENDATION

violative of his rights under the Confrontation Clause (Grounds Two and Eleven); (2) that the evidence was legally insufficient to convict him of sexual abuse (Section II of supporting memorandum); and (3) that Oregon denied him his Sixth Amendment right to a jury trial by imposing a dangerous offender sentence based on a finding of the aggravating facts by a preponderance of the evidence and not beyond a reasonable doubt (Ground One). Petitioner's Memorandum in Support (#44), pp. 22 & 31-32. Accordingly, the court deems Houff's *pro se* claims set forth in Grounds 3-10 & 12-33 of the Petition abandoned. See Renderos v. Ryan, 469 F.3d 788, 800 (9th Cir. 2006)(counsel for petitioner waived claims in petition for writ of federal habeas corpus, where counsel did not attempt to set forth the legal standards for such claims or attempt to meet them).

## II. Exhaustion and Procedural Default.

### A.   Standards.

A habeas petitioner must exhaust his claims by presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. Rose v. Lundy, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v.

17 - FINDINGS AND RECOMMENDATION

<u>Hillery</u>, 474 U.S. 254, 257, (1986)).  If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review.  <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence.  <u>Gray v. Netherland</u>, 518 U.S. 152, 162 (1996); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 337 (1992); <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986).

**B.**   **<u>Analysis</u>**

**1.**   **<u>Sufficiency of the Evidence Claim (Section II of Supporting Memorandum)</u>**

In his supporting memorandum, Houff alleges the evidence was legally insufficient to convict him of sexual abuse.  Memorandum in Support (#44), p. 31.  At trial, Houff's counsel moved for judgment of acquittal on all charges based on insufficient evidence.  The court granted the motion as to one count of sexual abuse.  Tr. 342,

349.   The court determined there was enough evidence for the attempted rape charge to go to the trier of fact, but sitting in that role found Houff not guilty of attempted rape.  Tr. 395.  In his first direct appeal to the Oregon Court of Appeals, Houff assigned as error the trial court's denial of his motion for judgment of acquittal on the sexual abuse charges.  Respondent's Exhibits 104, p. 6.  In his Petition for Review to the Oregon Supreme Court, however, Houff abandoned this discreet sufficiency of the evidence claim.  Any discussion of sufficiency of the evidence was had in the context of petitioner's hearsay claim challenging the trial court decision to admit the victim's statements:  "[b]ut for the trial court's decision [to admit the statements], the evidence that defendant had committed the crimes of sex abuse in the first degree would be insufficient to support convictions on those charges."  Respondent's Exhibit 107, p. 2. Accordingly, Houff failed to fairly present a distinct claim of sufficiency of the evidence to Oregon's highest court and it is now procedurally defaulted.

> **2.**   **Sixth Amendment - *Apprendi* Standard of Review Claim (Ground One)[3]**

Respondent contends the claim set forth in Ground One (claim alleging that the trial court improperly imposed a dangerous offender sentence based on a preponderance of the evidence standard

---

[3]   Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L Ed 2d 435 (2000).

19 - FINDINGS AND RECOMMENDATION

rather than by proof beyond a reasonable doubt) is procedurally defaulted because petitioner did not raise it at his sentencing hearing.  Response to Petition for Habeas Corpus (#30), p. 8; Reply to Memorandum in Support (#46), p. 8.  In response, Houff argues that while trial counsel did not cite the Sixth Amendment at sentencing, he specifically objected to the preponderance of the evidence standard being used to determine whether he was dangerous offender.  Memorandum in Support (#44), p. 36.  Houff further asserts that since the state discussed the merits of Apprendi on appeal, including its view of what the appropriate relief would be if the claim were granted, the Court of Appeals affirmed without opinion, and that court was free to reach the Apprendi issue as plain error, it cannot be assumed it invoked a procedural bar.  Id. at 37-38.  Finally, Houff contends he fairly presented this claim in his second direct appeal and that because respondent represented in its response to that appeal that the claims had been previously litigated on the merits, it judicially estopped from taking a different view here.  Id. at 36-40.

     With regard to Houff's argument that he fairly presented this claim in his first direct appeal, I note that during the sentencing hearing, in relation to the proper standard the court should employ in determining whether Houff was a dangerous offender under the relevant state statute, counsel stated "I did not research the fact.  I think the Court's correct that the standard is preponderance, but since I didn't research it I don't want to waive

any argument in the future if that's not correct." Tr. 453. The court found Houff was a dangerous offender and on that basis sentenced him to an indeterminate 30 year sentence (with a 48 month minimum) on the four counts of Using a Child in a Display of Sexually Explicit Conduct. Houff appealed his convictions and sentence, but did not initially raise a claim relating to his dangerous offender status. However, while his appeal was pending before the Oregon Court of Appeals, Apprendi issued. Houff filed a supplemental appellant's brief raising as an additional assignment of error the trial court's imposition of a dangerous offender sentence. Respondent's Exhibit 105. In that brief, Houff conceded that he "did not object to his sentence on the basis argued on appeal" and that he was appealing his dangerous offender sentences on counts 1 through 4, "on a basis not argued below." Id. at 3. Houff summarized his two arguments in his supplemental brief as follows: (1) that due to the state's failure to allege dangerous offender status in the indictment, the trial court did not have jurisdiction over the aggravated offense; and (2) that defendant was entitled to a jury finding of his dangerous offender status. Id. at 5. Houff asked the Court of Appeals to exercise its discretion to review his admittedly unpreserved errors under the plain error doctrine. Id. at 16. In response, respondent disputed petitioner's entitlement to review by the Oregon Court of Appeals and argued that regardless he would not be entitled to

relief on the merits of either of his claims.  The Oregon Court of Appeals Affirmed without opinion.

In his Petition for Review, Houff presented the following legal question relating to dangerous offender status:  "[i]s the existence of [a personality disorder] an element of an aggravated offense, such that a sentencing court lacks jurisdiction over the aggravated offense if the aggravating element is not pleaded in the indictment?" Respondent's Exhibit 107, p. 1.  Houff cited Apprendi in his Petition for Review only for the proposition that dangerous offender status should be treated as an element of an aggravated offense.  Id. at 9-10.  Nowhere in the Petition for Review does Houff argue entitlement to relief based on the fact the trial court employed a preponderance of the evidence standard rather than a beyond a reasonable doubt standard to determine whether Houff was a dangerous offender.  Instead, Houff argued the Oregon Supreme Court should accept review "in order to clarify the jurisdictional effect of an indictment, and the reviewability of possible jurisdictional errors, especially in light of the Apprendi decision." Id. at 12.  Accordingly, the record supports only the conclusion that Houff did not fairly present the claim set forth in Ground One to the Oregon Supreme Court in his first direct appeal.

Houff alternatively argues that he raised the issue in his second direct appeal and that the state is judicially estopped from arguing this claim was not fairly presented because it conceded during Houff's second direct appeal that the issue had previously

been litigated on the merits.  Memorandum in Support (#44), pp. 38-
40.   I disagree.   In his second direct appeal, following a
correction of judgment relating to the length of his post-prison
supervision sentence, Houff argued that the trial court's upward
departure under Oregon's dangerous offender statute, based on
predicate facts not found beyond a reasonable doubt, violated the
long-held principles "compiled" in Apprendi that "other than the
fact of a prior conviction, any fact that increases the penalty for
a crime beyond the prescribed statutory maximum must be submitted
to a jury and proven beyond a reasonable doubt."   Respondent's
Exhibit 139, pp. 9-10 (quoting Apprendi, 530 U.S. at 490).   In
response, respondent argued, among other things, that "claim
preclusion bars review of any challenges to the unmodified portions
of defendant's sentences," noting that:

> [i]n his first appeal, defendant raised challenges to his
> sexually dangerous offender sentences to counts 1-4, as
> invalid under Apprendi v. New Jersey, 530 US 466, 120 S
> Ct 2348, 147 L Ed 2d 435 (2000), because the sentences
> exceeded the statutory maximum of 20 years, and were
> imposed without jury findings.  (SER-58, 62-63).  He also
> argued that the dangerous offender "elements" must be
> alleged in the indictment, and the failure to so allege
> constituted a jurisdictional failure.  (SER-61).  He
> acknowledged that those claims were unpreserved, and
> argued that they should be reviewed under the "plain
> error" doctrine.  (SER-64).
>
>                           * * *
>
> The state argued that no plain error occurred, that the
> claimed elements need not be in the indictment, and that
> no jurisdictional impediment to sentencing existed.  The
> state also argued that defendant waived jury, and such
> waiver extended to sentencing matters.  (SER 94-111).

23 - FINDINGS AND RECOMMENDATION

* * *

    Here, both issue and claim preclusion bar defendant's challenges to the duration of his prison terms as to all counts.   Defendant previously litigated in the prior appeal whether he was entitled to jury resolution of dangerous offender "elements" on counts 1-4.   He also challenged, on jurisdictional grounds, the imposition of dangerous offender sentences.    The prior appeal also resolved pleading and jurisdictional challenges associated with defendant's <u>Apprendi</u> claims.    Any challenges to counts 1-4 (other than the modified PPS term) are barred by both issue preclusion and claim preclusion.

Respondent's Exhibit 140A, pp. 20-24.

    It is these excerpts Houff relies on to argue that because the state admitted that the claim set forth in Ground One was previously disposed of on the merits, it is judicially estopped from arguing he failed to fairly present it to the Oregon's highest court in this federal forum.   Memorandum in Support (#44), pp. 39-40 (citing <u>Whaley v. Belleque</u>, ___ F. 3d ___, 2008 WL 763774 at *5 (9th Cir. 2008)).   Were the claim at issue one related to whether the predicate facts supporting a dangerous offender designation have to be pleaded in the indictment in order to give the sentencing court jurisdiction or whether Houff was entitled to have a jury resolve those predicate facts, I might agree with petitioner.   However, the discreet claim raised by petitioner here involves whether the sentencing court erred in applying a preponderance of the evidence standard rather than a beyond a reasonable doubt standard to its determination of whether petitioner was a dangerous offender.   I cannot fairly conclude that

respondent conceded that this issue was previously litigated on the merits in the first direct appeal, such that it should be judicially estopped now from arguing that such claim was not fairly presented and is therefore procedurally defaulted.

My conclusion is supported by the fact that in his first supplemental direct appeal, Houff noted that trial counsel raised/preserved the issue of standard of review before the trial court, but nevertheless failed to identify this as a discreet claim warranting relief.  Accordingly, I cannot conclude that it was fairly presented to Oregon's highest court in a procedural context in which its merit was considered.

## III.  The Merits

Houff contends in Ground Two that he was denied his Sixth Amendment rights under the Confrontation Clause when the trial court admitted E.P.'s out-of-court statement made to her mother because such statement was unreliable, inconsistent and coerced. Memorandum in Support (#44), pp. 22 & 26.

### A.    Standard of Review

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was:  (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A

state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  Id. at 410. The state court's application of clearly established law must be objectively unreasonable.  Id. at 409.  Where the state court supplies no reasoned decision, the court conducts an independent review of the record to determine whether the state court decision was objectively unreasonable.  See Delgado v. v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000).

**B.   Analysis**

In Ohio [v. Roberts, 448 U.S. 56, 64 (1980)], the court set forth a framework for determining whether admission of an extrajudicial statement violated the Confrontation

> Clause, holding that hearsay statements bear adequate
> "indicia of reliability" to admit them against an accused
> when:  (1) "the evidence falls within a firmly  rooted
> hearsay  exception,"  or  (2)  contains  "particularized
> guarantees  of  trustworthiness."  Id. at 66.

Forn v. A. Hornung, 343 F.3d 990, 995 (9th Cir. 2003).  While

rights  of  confrontation  and  cross-examination  under  the  Sixth

Amendment are not offended by the admission of hearsay evidence if

the evidence contains particularized guarantees of trustworthiness,

"hearsay  evidence  used  to  convict  a  defendant  must  possess  indicia

of  reliability  by  virtue  of  its  inherent  trustworthiness,  not  by

reference  to  other  evidence  at  trial."  Idaho v. Wright, 497 U.S.

805, 822 (1990).  The Supreme Court has established the following

nonexclusive  list  of  factors  that  courts  may  use  to  determine

whether  hearsay  statements  made  by  a  child  witness  in  a  sexual

abuse  case  are  reliable:  (1)  spontaneity  and  consistent

repetition,  (2)  mental  state  of  the  declarant,  (3)  use  of

terminology unexpected of a child of similar age, and (4) lack of

motive to fabricate.  Id. at 821-22.  Determination of reliability

is based on consideration of the totality of the circumstances and

"courts  have  considerable  leeway  in  their  consideration  of

appropriate factors."  Id.

In this case, the trial court held a competency hearing and

determined E.P. was unavailable.[4]  The court then heard argument on

---

[4]    Under the governing statute, Oregon Evidence Code 803
(18a)(b), "if a declarant is unavailable, the statement may be
admitted in evidence only if the proponent establishes that the
time, content and circumstances of the statement provide indicia of
   27 - FINDINGS AND RECOMMENDATION

Houff's motion to suppress E.P.'s out-of-court statement as unreliable under the Oregon Evidence Code 803 (18a)(b).[5]    The statute provides that in determining whether a statement possesses indicia of reliability the court may consider, but is not limited to, the following factors:

> (A)  The personal knowledge of the declarant of the event;

> (B)  The age and maturity of the declarant * * *;

> (C)  Certainty that the statement was made, including credibility of the person testifying about the statement and

---

reliability, and in a criminal trial that there is corroborative evidence of the act of abuse and of the alleged perpetrator's opportunity to participate in the conduct and that the statement possesses indicia of reliability as is constitutionally required to be admitted." "This rule appears to be more strict than the [federal confrontation clause standard established in <u>Idaho v. Wright</u>,] in that even after the determination of unavailability and reliability is made the rule requires corroboration of the act of sexual conduct and of defendant's participation in it."  Laird C. Kirkpatrick, Oregon Evidence, 570-71 (3rd ed 1996).

[5]    I note that respondent does not argue that Houff failed to raise a federal Confrontation Clause claim in the Oregon courts. Rather, respondent's position is that the Oregon statute is consistent with pre-<u>Crawford v. Washington</u>, 541 U.S. 36 (2004) Confrontation Clause jurisprudence. Reply to Memorandum in Support (#46), p. 3; Response to Habeas Corpus Petition (#30), p. 14. Houff also contends that he adequately raised the issue in state court, but alternatively raises a claim of ineffective assistance of counsel for failing to object to the admission of E.P.'s statements under the Confrontation Clause.  Memorandum in Support (#44), pp. 29-30.  Though it is within my discretion to address *sua sponte* the issue of whether the subject trial court error claim is procedurally defaulted, I decline to do so because I conclude that given that the PCR court determined there was no violation of the Confrontation Clause in its examination of the ineffective assistance claim, I would reach the merits of the Confrontation Clause issue in any event.  Respondent's Exhibit 131, p. 22. Accordingly, I will not address Houff's alternative ineffective assistance claim (Ground Eleven).

28 - FINDINGS AND RECOMMENDATION

any motive the person may have to falsify or distort the statement;

(D)  Any apparent motive the declarant may have to falsify or distort the event, including bias, corruption or coercion;

(E)  The timing of the statement of the declarant;

(F)  Whether more than one person heard the statement;

(G)  Whether the declarant was suffering pain or distress when making the statement;

(H)  Whether the declarant's young age * * * makes it unlikely that the declarant fabricated a statement that represents a graphic, detailed account beyond the knowledge and experience of the declarant;

(I)  Whether the statement has internal consistency or coherence and uses terminology appropriate to the declarant's age  * * *;

(J)  Whether the statement is spontaneous or directly responsive to questions; and

(K)  Whether the statement was elicited by leading questions.

OEC 803 (18a)(b).

The trial court systematically considered the above statutory factors in reaching its conclusion that E.P.'s statement possessed the necessary indicia of reliability.  Specifically, the court determined:

(A)  E.P. had personal knowledge of the event;

(B)  E.P. was sufficiently matured to recount events in her life;

(C)  The statement was made and despite concerns relating to Tran's reliability as a witness, the court detected no lack of truthfulness on her part, or any motive or bias to lie, and on

balance, the court found no sufficient reason to discard her
as an unreliable reporter of what her daughter told her;[6]

(D)   There was no basis for E.P. to falsify or distort the
event based on bias, and though she was clearly under
substantial pressure to come up with an answer, the court
found it "substantially more likely than not" that there was
no other source for the sexual content of E.P.'s statement,
and on balance "neither corruption or coercion in any sense
weigh[ed] against admitting the statement";

(E)   Timing of the statement was insignificant;

(F)   Only one person heard the statement and that militated in
Houff's favor;

(G)   The child was suffering emotional distress at the time
she made her statement due to her mother threatening suicide;

(H)   Given the child's young age, it was unlikely she
fabricated a statement beyond her knowledge and experience;

---

[6]      Tran's credibility and consistency as a witness was hotly
debated during the motion to suppress hearing and continues to be
a point Houff argues undermines the trial court's determination
regarding the reliability of E.P.'s statement.  However, the
reliability inquiry required by the Confrontation Clause is limited
to whether the circumstances surrounding the making of the
statement "'render the *declarant* particularly worthy of belief.'"
Swan v. Peterson, 6 F.3d 1373, 1382 (9th Cir. 1993)(quoting Wright,
497 U.S. at 820)(emphasis in original).  The reporting witness is
subject to cross-examination and the fact finder must weigh her
credibility.  Id.  Indeed, E.P.'s statement, as relayed by Tran,
actually raised doubts in the fact finder's mind as to whether
E.P.'s encounters with Houff were consistent with the injuries
revealed in the medical exam.  Given the inconsistencies, the judge
was inclined to believe that the penetration, if any, was attempted
anal penetration and fleeting in nature.  He ultimately discounted
the medical evidence (which indicated full vaginal penetration) for
this reason, having also noted that medical personnel could not
date the injury and that he was not sufficiently confident that
there was no reasonable possibility of alternate abuse given that
the mother was unaware of E.P.'s encounters with Houff for some
period of time, and acquitted Houff on two of the most serious
charges.  Tr. 354.

(I)    As relayed by Tran, the statement was internally consistent as to touching, but internally inconsistent as to what penetration, if any, occurred;

(J)    The statement was not spontaneous, but directly responsive to questions; and

(K)    The statement was elicited by leading questions to the extent they suggested Houff did something, but they were not so leading "as to suggest what occurred in a way which would explain away [E.P.'s] familiarity with a graphic detail[ed] account beyond [her] knowledge and experience."[7]

Tr. 174-182; 193.    As just described, the trial court made reliability findings of the type explicitly approved by the Court in Wright:    (1) the statement was not spontaneous, but rather was made in response to questions and only one statement was made to one individual (Tran); (2) E.P. was under stress when she made the statement and clearly under substantial pressure to come up with an answer; (3) it was more likely than not that there was no other source for E.P.'s sexual knowledge; and (4) given E.P.'s age, it was unlikely she fabricated a statement which was beyond her knowledge and experience (and despite pressure to answer Tran's question, she had not been lead as to the sexual content).

Though, as noted above, courts have leeway in consideration of appropriate factors, the record reveals that the trial court improperly referenced photographic evidence in reaching its conclusion that the statement bore an indicia of reliability and should be admitted at trial.    Tr. 174, 178-80.    While it was

_____

[7]    The statement was made prior to the CARES examination establishing E.P. had vaginal injuries consistent with abuse.

31 - FINDINGS AND RECOMMENDATION

necessary under the Oregon statute for the trial court to identify corroborating evidence of abuse and Houff's opportunity to commit the crimes, reference to the photographs and Houff's admission that he took them in assessing the reliability of the statement itself was improper under the Confrontation Clause.  See Wright, 497 U.S. at 823 ("the use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility."). Moreover, the Court has held that "selective reliability" is a concern in the child hearsay context in that "[c]orroboration of a child's allegations of sexual abuse by medical evidence of abuse, for example, sheds no light on the reliability of the child's allegations regarding the identity of the abuser.  There is a very real danger that a jury will rely on partial corroboration to mistakenly infer the trustworthiness of the entire statement." Id. at 824.

Nevertheless, the court's improper reference to the photographs did not taint its reliability finding.  A fair reading of the record does not reveal that the photographs were the court's primary reason for finding E.P.'s statement reliable.  Rather, the court largely based its reliability finding on its determination

that E.P. had no other source for the sexual knowledge in the statement. Accordingly, though I am cognizant of the factors weighing against reliability (most significantly that the statement was not spontaneous, but made in response to Tran's demand that E.P. tell her what Houff did to her and that is was made under the substantial pressure of Tran threatening to commit suicide and alternately promising gifts) and cognizant of the fact the court improperly referenced the photographs and Houff's admission that he took them, having reviewed the trial court's careful, on the record examination of the numerous statutory factors it considered in assessing the reliability of the statement, I cannot conclude that the court's determination that E.P.'s statement bore the necessary indicia of reliability and its ultimate decision to admit the statement was contrary to or involved an unreasonable application of federal law as determined by the Supreme Court in <u>Idaho v.</u> <u>Wright</u>.

**RECOMMENDATION**

_____For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) should be DENIED, and judgment should enter DISMISSING this case with prejudice.

**SCHEDULING ORDER**

_____Objections to these Findings and Recommendation, if any, are due December 10, 2008. If no objections are filed, then the Findings and Recommendation will be referred to a United States District Judge for review and go under advisement on that date. If

   33 - FINDINGS AND RECOMMENDATION

objections are filed, any response to the objections will be due fourteen days after the date the objections are filed and review of the Findings and Recommendation will go under advisement on that date.

### NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 24th day of November, 2008.

/s/ Paul Papak
Paul Papak
United States Magistrate Judge

34 - FINDINGS AND RECOMMENDATION